**THOMPSON LAW, LLC**
Colin M. Thompson, Esq.
2nd Floor, J.E. Tenorio Bldg.
PMB 917 Box 10001
Saipan, MP 96950
Telephone No.: (670) 233-0777
Facsimile No.:  (670) 233-0776
cmtlaw@live.com

*Attorney for Thomas L. Nolte*

FILED
Clerk
District Court

MAR -5 2018

for the Northern Mariana Islands
By_____
         (Deputy Clerk)

# IN THE DISTRICT COURT

# OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| THOMAS L. NOLTE,<br><br>Plaintiff,<br><br>vs.<br><br>XTRA AIRWAYS, INC., and DOES I – V,<br><br>Defendants. | CIVIL ACTION NO.<br><br>COMPLAINT and DEMAND FOR JURY |

**COMES NOW**, the Plaintiff, Thomas L. Nolte ("**Mr. Nolte**"), by and through counsel to make the following allegations against XTRA Airways, Inc. and TEM Enterprises Dba XTRA Airways for breach of contract and fraud.

## JURISDICTION AND VENUE

1. The United States District Court for the Northern Mariana Islands is the proper venue for this action pursuant to 28 U.S.C. §§ 1332(a)(1), because this is the District in which a substantial part of the events or omissions giving rise to the claims occurred.

2. All conditions precedent to the institution of this lawsuit have been fulfilled.

**PARTIES**

3. Mr. Nolte is a resident of Saipan, United States of America and during all times relevant to this complaint was a citizen of the United States of America.

4. At all relevant times, the Defendant XTRA Airways, Inc. ("**XTRA Airways**") is a Corporation incorporated pursuant to the laws of Florida with its principal place of business in Coral Gables, Florida.

5. Mr. Nolte is ignorant of the true names and capacities of Defendants sued as Does I through V, inclusive. Therefore, Mr. Nolte sues said Defendants by such fictitious names. Mr. Nolte reserves the right to amend the complaint to name the Doe Defendants as they become known. Mr. Nolte alleges that each of the Defendants named as Doe Defendants was in some manner responsible for the acts and omissions alleged herein and Mr. Nolte will amend the complaint to allege such responsibility when Mr. Pohl has ascertained the identity of the Doe Defendants.

6. It is further alleged on information and belief that the named and unnamed Defendants in this Complaint are alter egos, joint employers, and/or integrated enterprises of each other.

7. All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as successor, agent, employee, or under the direction and control of the others, except as otherwise specifically alleged. The alleged acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the other Defendants' unlawful acts and omissions alleged in this complaint. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants,

such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

## **STATEMENT OF FACTS**

8. Mr. Nolte is and, at all times relevant to this complaint, was qualified for the position of Manager of Asia Pacific with the Defendant. In early 2017, XTRA Airways decided to enter the airline market in China and Saipan.

9. XTRA Airways knew that Mr. Nolte was qualified for a management level position to head up the Saipan office.

10. XTRA Airways knew that Mr. Nolte was living and working in Boulder Colorado at the time they began to recruit him for the management position in Saipan.

11. XTRA Airways knew that in order to accept any management position with XTRA Airways, Mr. Nolte would need to quit his job in Boulder and move out of his home and relocate to Saipan.

12. XTRA Airways knew that Mr. Nolte's relocation would require Mr. Nolte to sacrifice his established lifestyle for the sake of a new position in Saipan.

13. In April 2017, XTRA Airlines initiated the process of hiring Mr. Nolte for a management position in Saipan.

14. Brian Dagot, XTRA Airways VP for International Markets contacted Mr. Nolte in early April to ask Mr. Nolte if he would be interested in a management position in Saipan.

15. After a couple of phone interviews with Mr. Dagot and other XTRA Airways executives, Mr. Nolte was invited to the company headquarters in Coral

Gables Florida to meet with Andrew Lotter the company COO and Frank Visconti, the company CEO.

16. Mr. Nolte met with the principals of XTRA Airways in Coral Gables Florida on April 26, 2017. At this meeting, XTRA Airways explained that they wanted Mr. Nolte to manage the airline's Asian operations from the Saipan office. XTRA Airways principals explained that they established routes from China in response to growing Chinese tourism in the area. Flights would originate in Nanjing and Tian Jin initially but the company expected to expand their routes over time.

17. On or about May 23, 2017, Defendant offered Mr. Nolte a job as Manager of Asia Pacific in the Offer of Employment as Manager of Asia Pacific ("Offer of Employment").

18. Defendant's offer stated that it would compensate $80,000.00 a year for Mr. Nolte's services as Manager of Asia Pacific.

19. On or about May 26, 2017, Mr. Nolte, reasonably relying on the representations of the Defendant, accepted Defendant's Offer of Employment and agreed to work as the Manager of Asia Pacific for Defendant.

20. On or about May 26, 2017, Mr. Nolte signed and agreed to the terms of the Relocation Policy – Eligible Expenses ("Relocation Policy"). Attached as Exhibit C is a true and correct copy of the Relocation Policy.

21. On or about May 26, 2017, Mr. Nolte, reasonably relying on the representations of the Defendant, agreed to relocate to Saipan, Commonwealth of the Northern Mariana Islands to work as the Manager of Asia Pacific for Defendant.

22. On or about June 9, 2017 Mr. Nolte, reasonably relying on the representations of the Defendant, moved from his home in Boulder, Colorado to Saipan, Commonwealth of the Northern Mariana Islands to work as the Manager of Asia Pacific for Defendant.

23. At all relevant times, Mr. Nolte performed his duties for the Defendant in a competent manner.

24. On or about December 1, 2017 Defendant notified Mr. Nolte that he would be removed from his position with Defendant effective November 27, 2017

## **BREACH OF WRITTEN CONTRACT**

25. Mr. Nolte incorporates herein by reference paragraphs 1-24 as hereinabove alleged as if set for the here in full.

26. Plaintiff performed all of the duties and responsibilities and fulfilled the conditions of the Offer of Employment and Relocation Policy.

27. Defendant breached the Offer of Employment by terminating Mr. Nolte's employment without excuse or justification.

28. Due to Defendant's breach of the contract, Mr. Nolte was damaged and continues to be damaged in an amount to be proven at trial.

//

//

## **BREACH OF ORAL CONTRACT**

29. Mr. Nolte incorporates herein by reference paragraphs 1-28 as hereinabove alleged as if set for the here in full.

30. Mr. Nolte performed all of the duties and responsibilities and fulfilled the conditions of the Contract.

31. Defendant breached the Offer of Employment by terminating Mr. Nolte without excuse or justification within less than a year.

32. Due to Defendant's breach of the contract, Mr. Nolte was damaged and continues to be damaged in an amount to be proven at trial.

## **FRAUD**

33. Mr. Nolte incorporates herein by reference paragraphs 1 through 24 as hereinabove alleged as if set forth here in full.

34. Defendant's statements contained in paragraphs 1 through 12 and those promises made in the Offer of Employment were false and untrue. In truth, the Defendant acted with reckless disregard in the way it recruited Mr. Nolte. XTRA made statements to the effect that Mr. Nolte could reasonable expect extended employment in excess of one year if he accepted the job with XTRA Airways. XTRA Airways made false statements to Mr. Nolte about its ability to operate flights between the CNMI and China legally so that it could retain Mr. Nolte.  In fact, these statements were false, XTRA Airways could not legally operate flights between China and the CNMI at the time Mr. Nolte first arrived in Saipan.

35. On information and belief, XTRA Airways never intended to honor the commitments it made to Mr. Nolte but merely intended to induce , Mr. Nolte to accept

the position and go to work for the benefit of Defendant. Alternatively, XTRA Airways was reckless as to the truth of the statements it made to Mr. Nolte in order to encourage Mr. Nolte to resign from his prior employment and move from his home.

36. Mr. Nolte relocated to Saipan, Commonwealth of the Northern Mariana Islands in reliance of Defendant's misrepresentations and reckless statements. Defendant misrepresented its true intentions with the intent to deceive Mr. Nolte in that it did not intend to honor the terms of the Offer of Employment or oral promises made to Mr. Nolte or XTRA Airways was reckless with respect to its representations.

37. The Defendant knew or was reckless with respect to the statements in the Offer of Employment and other promises to be false when it made them.

38. Mr. Nolte believed the statements because Defendant had the apparent authority, ability and intent to perform. Mr. Nolte acted in justifiable reliance upon the representations of Defendant to his detriment.

39. Defendant acted with malice and in the conscious disregard of the rights of Plaintiff.

## DEMAND FOR JURY TRIAL

40. Mr. Nolte hereby demands a jury trial on all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Nolte prays for judgment as follows:

1. For lost wages;

2. For special and compensatory damages according to proof;

3. For punitive damages in an amount within the discretion of the trier of fact;

4. For reasonable attorneys fees incurred;

5. For costs of suit incurred;

6. For such other and further relief as the court may deem proper.

Respectfully Submitted this  5th day of March, 2018.

THOMPSON LAW, LLC

By: _____
Colin M. Thompson
CNMI Bar No. F0221
Attorney for Thomas L. Nolte